# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

PAUL E. DAVIS,

          Plaintiff,

vs.

T. ROBICHAUD, et al.,

          Defendants.

**AMENDED**

2:14-cv-00679-MMD-VCF

**ORDER AND**

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Paul Davis's Application to Proceed *In Forma Pauperis* (#1[1]) and complaint (#1-1). For the reasons discussed below, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and his first cause of action may proceed.

## *IN FORMA PAUPERIS* APPLICATION

Pursuant to 28 U.S.C. § 1915(a), a plaintiff may proceed *in forma pauperis* when payment of filing fees would prohibit that plaintiff from commencing a civil action or appealing a civil or criminal action. 28 U.S.C. § 1915(a)(4). Plaintiff Paul Davis claims in his Application to Proceed *In Forma Pauperis* that he is presently unemployed and incarcerated at CCA's Nevada Southern Detention Center ("CCA NSDC"). (#1). He was last employed in July 2013 when he made approximately $2,500 per month. (#1, ¶ 1(b)). At the time of application, Davis had $2.39 in his prisoner account. (#1, 5). Accordingly, Plaintiff's Request to Proceed *In Forma Pauperis* is granted.

---

[1] Parenthetical citations refer to the court's docket.

## LEGAL STANDARD

When an application to proceed *in forma pauperis* is granted, the court must screen the complaint to determine if it should be dismissed. *See* 28 U.S.C. § 1915(e)(2). Federal courts have the authority to dismiss the action if the action "is frivolous or malicious; . . . fails to state a claim on which relief may be granted; . . . or seeks monetary relief against a defendant who is immune from such relief." *Id*.

Federal Rule of Civil Procedure 8(a) states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must determine if a complaint has "crossed the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is implausible if its allegations are "merely consistent with liability," *Iqbal*, 556 U.S. at 678, or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id*. at 681 (citations omitted).

To determine if the complaint is plausible, the court must first identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," *id*. at 678, or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id*. at 681. Second, the court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 679. A claim is "plausible" if the factual allegations, accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

To consider whether a complaint has stated a claim on which relief can be granted, the court must accept all material allegations as true and construe said allegations in the light most favorable to the Plaintiff. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). If the complaint should be dismissed under section 1915(e), the Plaintiff should be allowed to amend the complaint to cure its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

If the factual allegations, accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id*. (citing FED. R. CIV. P. 8(a)(2)). Where an incarcerated *pro se* litigant is involved, however, the courts must hold the litigant to "less stringent standards." *See Hughes v. Rowe*, 449 U.S. 5, 10 n. 7 (1980).

## **BACKGROUND**

In his complaint, Plaintiff Paul Davis implicates five defendants. The first is T. Robichaud of the Las Vegas Metropolitan Police, who Davis claims "instigated the entire racial profiling that lead [*sic*] to Plaintiff's arrest." (#1-1, ¶ 2). The second defendant is A. Brosnahan, a Las Vegas State Trooper who stopped Davis for speeding. (#1-1, ¶ 3). The third is Detective K. Frampton who Davis claims ordered police officers to search Davis's truck. (#1-1, ¶ 4). The fourth is Detective H. Sandoval, who Davis claims searched Davis's truck without probable cause. (#1-1, ¶ 5). Finally, Davis claims that District Attorney Amber Graig[2] [*sic*] "chose to hand down an untimely indictment to keep the Plaintiff detained." (#1-1, ¶ 6).

Davis alleges that he was pulled over on July 27, 2013 while driving on I-15 for allegedly speeding. (#1-1). Both his person and his truck, a 2007 Chevy Tahoe, were searched after an officer stated that she could smell marijuana emanating from the vehicle. (#1-1, Count I). Contraband was

---

[2] Plaintiff mistakenly identified Assistant United States Attorney Amber Craig as District Attorney Amber Craig throughout the complaint.

found in the vehicle but Davis indicates that a "proper" field test was not conducted on the contraband. (#1-1, Count III). Davis was then arrested and taken into custody. (#1-1, Count I). He was present at a hearing at "Moapa City Court"[3] on July 30, 2013, where he claims the charges against him were dropped. (#1-1, Count II). Davis claims he was then taken into custody by the U.S. Marshalls on July 30, 2013, and held at CCA NSDC, where he continues to reside. (#1-1, Count II). He maintains that he was held without charges and that a parole violation had not been entered against him until August 6, 2013, when he was indicted. (#1-1, Count II).

## **DISCUSSION**

Davis brings his claim under 42 U.S.C. § 1983, a federal statute that provides a private right of action for the enforcement of provisions of the United States Constitution. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege, first, a deprivation of rights secured by the Constitution of the United States and, second, that the deprivation was committed by a defendant acting under the color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Section 1983 does not create substantive rights; it is merely a procedural device used to enforce substantive provisions of the United States Constitution and federal statutes. *Id.* If Davis's assertions are taken as true, Defendants were acting under color of state law at all relevant times because they acted pursuant to their authority as police officers for the Las Vegas Metropolitan Police Department.

Davis alleges that the rights that have been violated are racial profiling, unlawful detention, and due process. (#1-1, Counts I – III). He does not state which specific constitutional provisions or federal statutes he believes have been violated. *In forma pauperis* claims may be sustained, however, if such claims have an "arguable basis in law." 28 U.S.C. § 1915(d). *See also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). For the reasons discussed below, the court construes Davis's first claim as alleging Fourth and Fourteenth Amendment violations, which state a plausible claim for relief. As such, the Court finds

---

[3] A search for Moapa City Court resulted in the discovery of a Justice Court, Moapa Township located in Clark County, Nevada.

4

that Davis's Count I may proceed. For the reasons discussed below, Count II is dismissed without prejudice and Count III is dismissed with prejudice and without leave to amend.

### A. All Claims Against H. Sandoval are Dismissed Without Prejudice

Claims related to H. Sandoval are dismissed without prejudice because no factual allegations are made against such person. Davis states that Sandoval searched his truck without probable cause but he gives no facts related to this assertion. The assertion that Sandoval searched the truck without probable cause is a conclusion of law and is not entitled to the assumption of truth. As discussed above, *Iqbal* requires that the Plaintiff allege sufficient factual matter, taken as true, to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678. No such assertions have been made against Defendant H. Sandoval. The court recognizes that as an incarcerated *pro se* litigant, Davis should be held to "less stringent legal standards," *Hughes*, 449 U.S. at 10 n. 7, and, therefore, recommends that Davis be given leave to amend the complaint to include facts relating to H. Sandoval.

### B. Davis's Count I

Davis's first count alleges that he was racial profiled in the context of a traffic stop and that his car was then searched without probable cause. These allegations provide "an arguable basis in law" for violations of the Fourteenth Amendment and the Fourth Amendment. *Denton*, 504 U.S. at 25. Each alleged violation is addressed below.

### i. Racial Profiling and the Fourteenth Amendment

In Count I, entitled "Racial Profiling," Davis states that the police officers who stopped him alleged that he was speeding. (#1-1, ¶8). He claims he was travelling at 73-74 miles per hour in a 75 mile per hour zone. (#1-1, Count I). Davis also alleges that Officer Robichaud encouraged officer Brosnahan to "falsafy [*sic*] the Plaintiff's speed, so that she would have reason to pull him over for speeding . . .." (#1-1, Count I). Finally, Davis claims he was stopped "for no other reason than the fact that the Plantiff's [*sic*] truck bared Kansas plate's [*sic*] and that the truck had tinted windows and large

wheel's [*sic*], plus the fact that the Plaintiff was an African American. The court interprets this claim to allege a violation of the Fourteenth Amendment's Equal Protection Clause. (#1-1, Count I).

The Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). To establish a violation of the Equal Protection Clause, one must show evidence of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Establishing discriminatory intent requires a showing that a defendant acted "at least in part because of a plaintiff's protected status." *Serrano*, 345 F.3d at 1082.  The plaintiff must identify to which relevant protected class he belongs. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). In this case, Davis is African American. (#1-1, Count I).

The facts he alleges to support this allegation include that Officer Robichaud encouraged Officer Brosnahan to falsely claim Davis was speeding, that Davis was driving under the posted speed limit, and that Officer Robichaud falsely claimed Davis had been pulled over the previous night are facts that speak to whether the police officers had probable cause to stop Davis. (#1-1, Count I). Additionally, Davis states that the police had no reason to pull him over other than "the fact that the Plantiff's [*sic*] truck bared Kansas plate's [*sic*] and that the truck had tinted windows and large wheel's [*sic*], plus the fact that the Plaintiff was an African American." (#1-1, Count I). In the absence of an objective reason for the stop, the court concludes that these facts, taken as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

    **ii.**    **Unreasonable Searches and the Fourth Amendment**

Davis claims that Officer Brosnahan lied when she stated she could smell marijuana in the vehicle, that Officer Framption's canine unit falsely alerted to the truck, and that the truck was search without Davis's permission. (#1-1, Count I). The court interprets this claim to allege a violation of the Fourth Amendment's prohibition against unreasonable searches in relation to the search of Davis's car.

The Fourth Amendment guarantees that people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren*, 517 U.S. at 809-10; *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An automobile stop by police must be reasonable under the circumstances. *Id*. Generally, an automobile stop is reasonable when it is supported by probable cause. *Id*; *see also Prouse*, 440 U.S. at 659. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Warrantless searches are *per se* unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). The automobile exception to the Fourth Amendment's warrant requirement provides, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause to search will exist if "there is a fair probability that contraband or evidence of a crime will be found in a particular place, 'based on the totality of circumstances.'" *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir.2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); *see also United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012). A positive alert by a trained drug dog gives rise to probable cause to search a vehicle. *United States v. Franklin*, 547 F.3d 726, 735 (7th Cir.2008).

Davis claims that probable cause did not exist to search his car. (#1-1, ¶ 5). This is a legal conclusion and is not entitled to a presumption of truth. Davis asserts that Detective Frampton stated that the police dog alerted to the presence of contraband in the vehicle but that the dog, in fact, never alerted. (#1-1, Count I). Later in the complaint, however, Davis claims that Detective Frampton used a yellow

ball to cause the police dog to alert. (#1-1, Count III). Even if the dog did not alert, Officer Brosnahan claimed to have smelled marijuana emanating from the vehicle. This would be sufficient to establish probable cause. *See U.S. v. Heiden*, 508 F.2d 898, 900 (1974). Davis alleges, however, that Officer Brosnahan lied about being able to smell marijuana emanating from the vehicle. Given the "less stringent legal standards," *Hughes*, 449 U.S. at 10 n. 7, afforded *pro se* litigants at this stage, the court finds that Davis's allegations "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### C. Whether Any of the Defendants Are Immune From Suit Under Section 1983

Davis does not state whether he wishes to sue Defendants in their official capacities or in their personal capacities. State officials sued in their official capacities for damages do not qualify as persons under section 1983. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 25. The Eleventh Amendment to the United States Constitution provides for immunity for the state for suits "in law or equity," including those for monetary damages. U.S. Const. amend. XI. As such, any claims that may be made against all Defendants in their official capacities are dismissed with prejudice. By contrast, personal capacity suits seek to impose personal liability on a government official for actions taken under color of state law. *Kentucky v. Graham*, 473 U.S. 159 (1985). If Defendants are sued in their official capacities, they may enjoy absolute or qualified immunity from suit as discussed below.

Claims related to U.S. Attorney Amber Craig are dismissed with prejudice because Craig enjoys absolute immunity from section 1983 damages claims stemming from her role as a prosecutor. *See Fry v. Melaragno*, 939 F.2d 832, 836 (9th Cir. 1991). Absolute immunity applies to prosecutors in seeking an indictment. *See Hartman v. Moore*, 547 U.S. 250, 261-62 (2006); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976); *Milstein v. Cooley*, 257 F.3d 1004, 1012 (9th Cir. 2001); *Morley v. Walker*, 175 F.3d

756, 760 (9th Cir. 1999); *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 643 (9th Cir. 1999). As a result, all claims against Amber Craig are dismissed with prejudice.

To determine whether police officers can receive immunity, a two part inquiry must be conducted. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts, taken in the light most favorable to the moving party, show that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged injury. *Id.* Included in that determination is the question of whether the officers acted reasonably "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Clearly, police officers would be aware that lying to achieve an arrest and causing a narcotics dog to falsely alert to Davis's automobile is unlawful conduct. Thus, taking the Davis's factual allegations as true, the Defendant police officers would not be entitled to qualified immunity. Davis's Count I may proceed.

**D. Davis's Count II**

Davis's second count relates to alleged unlawful detention. Davis claimed that "the City of Moapa City Court" dropped all charges against him on July 30, 2013 but that he was then immediately taken into custody by U.S. Marshals and brought to CCA's NSDC. (#1-1, Count II). Davis claims U.S. Attorney Amber Craig "did not hand down the indictment untill [*sic*] Aug. 6th, 2013," which, Davis claims is four days too late. *Id*. Davis then claims the case against him should have been dismissed on August 3, 2013 because, "the Plaintiff did not have any charges pending, nor a parole violation untill [*sic*] Aug. 6, 2013 . . ." *Id*. Davis has now been held at CCA NSDC for nine months. *Id.*

Davis does not state the nature of the charges against him nor whether they are commenced in the state court or the federal court. Nevada Revised Statutes Chapter 171 provides that an indictment for

a gross misdemeanor must be made within two years of the commission of the offense, any other misdemeanor within one year, and a felony within three or four years depending upon the nature of the felony. N.R.S. § 171.090 and § 171.085 (West, Westlaw current through 2013 77th Regular Session and the 27th Special Session). Federal criminal procedural rules require that an indictment charging an individual with the commission of an offense must be filed within thirty days of the individual's arrest. 18 U.S.C. § 3161 (West, Westlaw, Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14). In either case, filing the indictment on August 6, 2013 is well within the time limit permitted by law. Davis's second claim, that he had not violated parole and, therefore, should not have been held cannot be sustained. Davis alleges no facts to indicate that he was kept in custody for a parole violation rather than in connection with charges relating to the traffic stop. For the foregoing reasons, Davis's Count II is dismissed without prejudice.

### E. Davis's Count III

Davis's final count relates to an alleged due process violation. Davis claims that Officer Broshnahan "turned her audio off" in order to falsify Davis's and the other officers' statements and to make false claims against Davis. (#1-1, Count III). He claims that Detective Frampton used a yellow ball to cause the canine officer to jump up on the truck to make it appear that the dog had alerted the officers to the presence of contraband. *Id.* He further claims that Officer Brosnahan used a video camera inside her police car to determine Davis's speed, rather than using radar. *Id.* Although, the camera shows Officer Broshnahan's speed at eighty miles per hour, she caught up with Davis, who was traveling approximately three quarters of a mile ahead of her, which, Davis claims, would not be possible if Davis was travelling at eighty miles per hour as well. *Id.* He claims that he was only travelling seventy-three to seventy-four miles per hour in a seventy-five mile per hour zone. (#1-1, Counts I and III). Finally, Davis alleges that he (Davis) was placed in front of the police car "to block what the named officers had

discovered pulled from his truck" and that a proper field test was not conducted to determine the identity of the contraband discovered within the truck. (#1-1, Count III).

Presumably, Davis's claim of "due process" refers to the Fourteenth Amendment's Due Process protections. However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks removed). The Fourth Amendment specifically addresses pretrial deprivations of liberty. *Albright* 510 U.S. at 274. Additionally, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Therefore, the Fourteenth Amendment can provide no additional relief to Davis. *See Id.* Accordingly, Count III is dismissed with prejudice.

ACCORDINGLY, and for good cause shown,

### **ORDER**

IT IS HEREBY ORDERED that Plaintiff Paul Edward Davis's Application to Proceed *In Forma Pauperis* (#1) is GRANTED.

IT IS FURTHER ORDERED that Davis is permitted to maintain the action to conclusion without the necessity of prepayment of any additional fees, costs, or security. This order granting *in forma pauperis* status does not extend to the issuance of subpoenas at government expense.

IT IS FURTHER ORDERED that the Clerk of Court filed the complaint.

IT IS FURTHER ORDERED that the plaintiff shall have twenty (20) days to furnish to the U.S. Marshal the required USM-285 forms. Within twenty (20) days after plaintiff receives copies of the completed USM-285 forms from the U.S. Marshal, plaintiff must file a notice with the court identifying which defendants were served and which were not served, if any. If the plaintiff wishes to have the U.S.

1 Marshal attempt service again on any unserved defendants, then a motion must be filed with the court
2 identifying the unserved defendants, specifying a more detailed name and address, and indicating
3 whether some other manner of service should be used. Pursuant to the Federal Rules of Civil Procedure
4 Rule 4(m), service must be accomplished within one hundred twenty (120) days from the date that the
5 complaint was filed.

6 IT IS FURTHER ORDERED that from this point forward, plaintiff shall serve upon defendants,
7 or their attorney if they have retained one, a copy of every pleading, motion, or other document
8 submitted for consideration by the court. Plaintiff shall include with the original paper submitted for
9 filing a certificate stating the date that a true and correct copy of the document was mailed to the
10 defendants or their counsel. The court may disregard any paper received by a district judge, magistrate
11 judge, or the Clerk which fails to include a certificate of service.

## **RECOMMENDATION**

13 IT IS RECOMMENDED that all claims against Defendant H. Sandoval be DISMISSED WITH
14 LEAVE TO AMEND.

15 IT IS FURTHER RECOMMENDED that all claims against Defendant Amber Craig be
16 DISMISSED WITH PREJUDICE.

17 IT IS FURTHER RECOMMENDED that Davis's Count I may PROCEED.

18 IT IS FURTHER RECOMMENDED that Count II be DISMISSED WITH LEAVE TO
19 AMEND.

20 IT IS FURTHER RECOMMENDED that Davis's Count III be DISMISSED WITH
21 PREJUDICE.

22 IT IS FURTHER RECOMMENDED that, if the court adopts this report and recommendation, a
23 DATE be set by which Davis's amended complaint is due.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to Local Special Rule 2-2, the Plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party or the party's attorney. **Failure to comply with this Rule may result in dismissal of the action.** *See* LSR 2-2 (emphasis added).

DATED this 6th day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE